```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                              :
UNITED STATES OF AMERICA                      :
                                              :    CASE NO. 1:11-CR-257
          Plaintiff,                          :
                                              :
vs.                                           :    OPINION & ORDER
                                              :    [Resolving Doc. Nos. 17, 18, 19, 20, and 24.]
KAREN A. ANDERSON-BAGSHAW                     :
                                              :
          Defendant.                          :
                                              :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this case, the United States charges Karen A. Anderson-Bagshaw, a former employee of the United States Postal Service, with fraudulently procuring disability benefits. [Doc. 3.] The government bases its charges in part on allegations that Defendant Bagshaw worked at several small business ventures, including a physically active role in the operation of an alpaca farm in her backyard, while claiming that debilitating back pain made her unable to work. *Id* at 6. The Government's investigation included video surveillance of the Defendant's property, and federal agents took oral statements from the Defendant while executing a search warrant on her residence.

The Defendant moves the Court to suppress the video recordings [Doc 19] and oral statements. [Doc. 20.] The Defendant further moves for leave to file a motion for a Bill of Particulars, [Doc. 17], to compel the government to elect counts, [Doc. 18], and (jointly with the government) to continue the trial for 180 days. [Doc. 24.]

Case No. 1:11-CR-257
Gwin, J.

For the following reasons, the Court **DENIES** the Defendant's motions to suppress, **GRANTS** the Defendant's motion for leave to file a motion for a Bill of Particulars, **DENIES** without prejudice the Defendant's motion to require the United States to elect counts, and **GRANTS** in part parties' joint motion for a continuance, setting trial for October 11, 2011.

## I. Background

*A. The Surveillance Camera*

In the course of its investigation into whether the Defendant improperly received disability benefits, the United States Postal Service Office of Inspector General ("OIG") sought to observe the rear of the Defendant's property where an alpaca farm is located. An OIG worker's compensation analyst conducted early drive-by observations, but Defendant Bagshaw's house obscured the backyard from view, and by dense foliage in the adjacent lot. However, and for unrelated reasons, the forested lot next to the Bagshaw property was logged and a line of sight opened. [Hr'g Tr. 12:39.][1] At that point, OIG sought and received permission from the Illuminating Company, a local electric services provider, to install a camera on a utility pole outside Bagshaw's property but next to Defendant Bagshaw's property. [Doc. 26 at 2.] An OIG technical officer furnished the utility company with a box containing a video camera, that could not capture audio footage but could pan, rotate, and zoom. On June 16, representatives from the Illuminating Company hung the box on the utility pole approximately 35 feet above the ground. [Hr'g Tr. 12:42]; [Doc. 19 at 2.] The Government neither sought or obtained a search warrant before placing the camera.

OIG arranged to stream the video footage through a device installed on June 17, 2009 by

---

[1] The final transcript is not yet available, but in an effort to expedite release of this Opinion and Order, the Court refers to times indicated on its copy of a draft transcript.

-2-

Case No. 1:11-CR-257
Gwin, J.

employees of WindStream, an internet service provider. With the camera and internet access, the OIG agents could access the camera on a secure server. [Hr'g Tr. 12:43.]

Between June 17 and July 10, 2009, the camera recorded video footage of the Bagshaw property without interruption. [Doc. 19 at 2.] The yard behind Defendant Bagshaw's house was generally open to be viewed by adjoining property owners and the camera did not view any areas that were not visible from the neighboring lots. Though the camera enabled OIG agents to view areas behind the house that were not visible from the street, nothing on the Bagshaw property obscured the view from neighboring lots. The property had a wire mesh "pasture fence" meant to keep the alpacas from straying, but the mesh was functionally transparent and did not obscure the view from ground level. [Hr'g Tr. 12:52.] OIG Special Agent Stephanie Morgano daily checked the video camera feed. She regularly spent three to five hours per day observing the footage and directing the camera's zoom and orientation. [Hr'g Tr. 12:51.]

*B. The Search Warrant*

On October 27, 2009, a team of approximately 15 agents from the Department of Labor and the Postal Service executed a search warrant on the Bagshaw residence. [Hr'g Tr. at 14:26]; [Hr'g Tr. 14:30]. Upon entering the property, the team was informed that Defendant Bagshaw was at her mother's residence, approximately 20 miles away. [Hr'g Tr. 14:28]. Special Agent Brian Farber called the Defendant, informing her that the OIG was executing a search warrant and asked her to return to answer some questions. *Id.* The Special Agent did not require her to return, and when she asked, the Agent told her that she was not to be placed under arrest. *Id.* She did not return to the property for "at least an hour or two." [Hr'g Tr. 14:29.] Approximately twenty minutes after she arrived, two agents interviewed Defendant Bagshaw. The case agents provided her with a Miranda

Case No. 1:11-CR-257
Gwin, J.

rights form, explained it to her, and she signed and initialed beside each of the enumerated rights. Her right to an attorney was explained to her, but she did not request an attorney. [Hr'g Tr. 15:00.]

The interview began in her kitchen but was interrupted when the Defendant asked to use the restroom, and did so. When she returned, she requested that they continue in the living room, that she said was more comfortable for her, and the interview proceeded on her living room couch. During the interview, the case agents asked the Defendant if she would be willing to make a written statement under oath, and she agreed. The case agents did not display any weapons. Consistent with Department of Labor and Postal Service policy, the case agents did not record the interview. [Hr'g Tr., at 14:47.]

*C. Procedural History*

On June 9, 2011, a federal grand jury returned a twenty-one count indictment charging the Defendant with violating 18 U.S.C. § 1001 (false statements), 18 U.S.C. § 1341 (fraud and swindles) and 18 U.S.C. § 1920 (false statement/fraud to obtain federal employees compensation). [Doc. 3.] Counts 7 through 16 allege false statements that took place in the same interview. Counts 17 through 21 also allege false statements that took place within the same interview. [*Id*]; [Hr'g Tr. 15:42]. Defendant pled not guilty on June 21, 2011. [Doc. 24, at 1.] On August 16, 2011, Defendant Bagshaw filed a motion for leave to file a Bill of Particulars, [Doc. 17], a motion for an order to compel the United States to elect counts, [Doc. 18], and motions to suppress oral statements and video evidence. [Doc. 19]; [Doc. 20.] The United States filed responses on August 18, 2011, [Doc. 23], and on August 23. [Doc. 26]; [Doc. 27]. The Court held an evidentiary hearing on August 23, 2011.

Case No. 1:11-CR-257
Gwin, J.

## II. Analysis

*A. The Defendant's Motion To Suppress Video Footage*

Defendant Bagshaw moves to suppress video footage recorded by the utility pole camera, saying that the Government's surveillance of her backyard violated her reasonable expectation of privacy in violation of the Fourth Amendment. The Fourth Amendment protects individuals against "unreasonable searches and seizures" by the government and protects privacy interests where an individual has a reasonable expectation of privacy. *Smith v. Maryland*, 442 U.S. 735, 740 (1979). An expectation of privacy is protected by the Fourth Amendment where (1) an individual has exhibited a subjective expectation of privacy, and (2) that expectation of privacy is one that "'society is prepared to recognize as reasonable.'" *Id.* (quoting *Katz v. United States*, 389 U.S. 347, 516 (1967) (Harlan, J., concurring)). In areas where an individual has a legitimate privacy interest, the Fourth Amendment prohibits warrantless searches of an individual's home or possessions, subject to only limited exceptions. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). Generally, any evidence obtained in violation of the Fourth Amendment must be suppressed, as well as any evidence seized subsequent to that illegal investigation as "fruits of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963).

The video evidence obtained here did not violate Defendant Bagshaw's Fourth Amendment rights. First, the Defendant did not manifest any subjective expectation of privacy. Where defendants have taken steps to create a private zone within the curtilage of a residence, courts are willing to deem utility-pole surveillance a search within the meaning of the Fourth Amendment. *United States v. Cuevas-Sanchez*, 821 F.2d 248 (5th Cir. 1987) (defendants manifested a subjective expectation of privacy by erecting a ten-foot-high metal fence). Here, however, the backyard of the

Case No. 1:11-CR-257
Gwin, J.

Bagshaw residence was entirely open to observation from adjacent properties, and the wire-mesh alpaca fence neither hampered these views nor manifests any subjective expectation of privacy.

Moreover, any subjective expectation of privacy Defendant Bagshaw may have had in her open backyard would have been unreasonable. The Supreme Court has expressly rejected an invitation to create "a rule of constitutional dimensions" that backyard conduct "will not be observed by a passing aircraft–or by a power company repair mechanic on a pole overlooking the yard." *California v. Ciraolo*, 476 U.S. 207, 214 (1986). Those are precisely the circumstances presented here, where the view afforded by the United States' surveillance camera is identical to the view available to the power company's employee responsible for installing it.

Furthermore, the contested area of the Defendant's backyard was clearly visible from either adjoining lot. Law enforcement officials "may see what may be seen" from vantage points where they have a right to be. *Florida v. Riley*, 488 U.S. 445, 449 (1989). This includes circumstances in which the observed areas are deemed to fall within the curtilege of a residence–a factor not established here. *Id.* at 449-50 (1989); *Ciraolo*, 476 U.S. at 213. Silent video surveillance captured under these circumstances is inoffensive to surveillees' Fourth Amendment rights. *United States v. Jackson*, 213 F.3d 1269 (10 Cir. 2000) (rev'd on other grounds, *Jackson v. United States*, 531 U.S. 1033 (2000)) (finding no reasonable expectation of privacy where cameras installed on utility poles were incapable of viewing inside the home); *United States v. Urbina*, No. 06-cr-336, 2007 WL 4895782 (E.D. Wis., Nov. 6, 2000). And the Sixth Circuit has long said that exposed backyard areas do not give rise to reasonable expectations of privacy that would trigger Fourth Amendment protections. *United States v. Bratton*, 434 F.2d 51 (6th Cir. 1970) (holding that a county sheriff did not violate a moonshiner's Fourth Amendment rights in observing a distillery apparatus from over

-6-

Case No. 1:11-CR-257
Gwin, J.

a fence).

Technology, of course, has progressed since the moonshiner's conviction in *Bratton*, and will continue to present challenges to defendants' Fourth Amendment rights as law enforcement officials deploy increasingly powerful surveillance technologies. "[T]echnological enhancement of ordinary perception from a vantage point" may present Fourth Amendment concerns in cases where sense-enhancing technologies *not in general use* permit observations "that could not otherwise have been obtained without physical 'intrusion into a constitutionally protected area.'" *Kyllo v. United States*, 533 U.S. 27, 33-34 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 512 (1961)). This case, however, which involves a camera placed on a utility company's property by the company's agents and with permission of the utility, affording observations of an open backyard identical to those available to a curious utility worker with a cheap pair of binoculars, or the disinterested glance of neighbors in either adjoining lot, is not one of them. The Defendant's motion to suppress video evidence captured by the utility pole camera is **DENIED**.

B.  The Defendant's Motion To Suppress Oral Statements

Defendant Bagshaw moves to suppress oral statements made to officers at the time the search warrant was executed, saying that her waiver of *Miranda* rights was coerced. She also says that the fact that her statement was not recorded supports a finding that her statement was coerced. Both arguments fail.

"*Miranda* [*v. Arizona*, 384 U.S. 436, 444-5 (1966)] requires law-enforcement officers to give warnings, including the right to remain silent, before interrogating individuals whom the officers have placed 'in custody.'" *United States v. Panak*, 552 F.3d 462, 465(6th Cir. 2009) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994)). The defendant bears the burden of establishing

-7-

Case No. 1:11-CR-257
Gwin, J.

custodial status. U.S. v. Charles, 738 F.2d 686, 692 (5th Cir. 1984) (overruled on other grounds by United States v. Bengivenga,845 F.2d 593 (5 Cir. 1988) (en banc). Statements made in response to custodial interrogation "must be suppressed unless the suspect first waived his *Miranda* rights voluntarily, knowingly and intelligently." United States v. Al-Cholan, 610 F.3d 945, 954 (6th Cir. 2010).

First, Defendant Bagshaw was not "in custody" for *Miranda* purposes. An individual is deemed to be in custody if, under the totality of the circumstances, a reasonable person would not feel free to end the encounter and leave. United States v. Panak, 552 F.3d 462, 471 (6th Cir. 2009) (defendant was not in custody where officials knocked, defendant sat on couch at her residence, the interview lasted 45 minutes to an hour, and the defendant was not handcuffed, even though she was not told she could leave). No significant restrictions were imposed on Defendant Bagshaw. The interview was conducted in her home, first in her kitchen and then, upon her suggestion that the living room would be more comfortable, on her couch. [Hr'g Tr. 14:39]. She had freedom of movement, was not handcuffed of physically restrained, and the agents made no indication that she was not free to leave at any time. [Doc. 27 at 3.] She was never placed under arrest, and there was no display of weapons. [*Id.* at 4.]

Though there were a number of federal law enforcement personnel in and around her house, a cluster of officers does not transform a noncustodial interview into a custodial interrogation. United States v. Robinson, 217 Fed. Appx. 503, 507-9 (6th Cir. 2007) (three officers in a living room interview not custodial); United States v. Flores, 193 Fed. Appx. 597, 605-606 (6 Cir. 2006) (interview with six officers on living room sofa not custodial).

Defendant Bagshaw offers no persuasive evidence that her will was overcome, and fails to

Case No. 1:11-CR-257
Gwin, J.

establish her custodial status. Under the conditions of the Defendant's interview, a reasonable person would have felt free to terminate the interview and leave. *United States v. White*, 270 F.3d 356, 366 (6th Cir. 2001); *Panak*, 552 F.3d at 468.

Even if Defendant Bagshaw were deemed "in custody" when interviewed on her couch, her *Miranda* waiver was not involuntary. Asked to return home and answer questions, Defendant Bagshaw voluntarily returned, [Hr'g Tr. 14:28], proclaimed "I have nothing to hide" in agreeing to speak with investigators, [Doc. 20 at 2], paused the interview alternately to use the bathroom [Hr'g Tr. 14:39] and locate her cat [Doc. 27 at 3], suggested relocating to a more comfortable location, *id.*, and after giving a verbal statement on her living room couch, agreed once again to give a written statement in her own handwriting. [*Id.*] Analyzing the voluntariness of a *Miranda* waiver requires an evaluation of the totality of the circumstances from the perspective of the police, *Garner v. Mitchell*, 557 F.3d 257, 263 (6th Cir. 2009) (en banc), and in the context of an ongoing search warrant, the voluntariness of the Defendant's waiver borders on the blithe and effusive.

Defendant Bagshaw would have this Court consider what she characterizes as the "inexplicabl[e]" decision of the federal agents not to record her interview. [Doc. 20 at 5.] But no law requires federal agents to record interviews. *United States v. Dobbins*, No. 96-4233, 1998 WL 598717, at *4 (6th Cir. Aug. 27, 1998) (citing *United States v. Coades*, 549 F.2d 1303, 1305 (9th Cir. 1977)). And both United States Postal Service and Department of Labor policies forbid it. [Hr'g Tr. 14:48-49.] Under the totality of her circumstances reviewed above, including two waivers, a signed statement in her own testimony, and the uncontested testimony of federal agents suggesting a fully voluntary waiver reviewed above, countervailing evidence of coercion cannot be speculatively inferred from the absence of corroborating recordings.

Case No. 1:11-CR-257
Gwin, J.

The Defendant mentions, but makes no serious argument concerning, the knowingness and intelligence with which she twice waived her *Miranda* rights. [Doc. 20 at 5.] Ample evidence supports finding that she knowingly waived her rights. She was competent enough to drive home, [Hr'g Tr. 15:02] and sharp enough to worry about her cat's whereabouts in the midst of the unexpected foot traffic. [Doc. 27 at 3.] Immediately upon being informed that a search warrant was being executed on her property, she asked if her alpacas would be seized. [Hr'g Tr. 14:28.] There is no indication that under the totality of the circumstances, Defendant Bagshaw's *Miranda* waivers were anything less than fully voluntary, knowing, and intelligently made. Accordingly, her motion to suppress oral statements made during the interview on October 27, 2009 is **DENIED**.

C. *The Defendant's Motion For Leave To File A Bill Of Particulars*

The Defendant moves for leave to seek a Bill of Particulars, that her counsel says is necessary to tailor her review of "voluminous" discovery in preparation for trial. [Doc. 17 at 2.] The government has produced over 500 hours of utility pole camera footage, and 22 banker's boxes of worker's compensation paperwork, medical records, and other documents. [*Id.* at 1.] The Defendant remains unclear as to the nature of the government's allegations that she has engaged in "outside work activities," [*Id.* at 2], and testified to limitations and impairments in her review of documents remaining in government custody. [Hr'g Tr. 15:32.] If discovery does not sufficiently allow Defendant Bagshaw to prepare, the Court **GRANTS** Defendant Bagshaw's motion for leave to file a motion for a Bill of Particulars, to be submitted by September 20, 2011.

D. *The Defendant's Motion For An Order To Compel The Government To Elect Counts*

The Defendant says that the twenty-one count indictment is multiplicitous, and moves

Case No. 1:11-CR-257
Gwin, J.

this Court to compel the United States to consolidate the counts and dismiss any surplus counts under Rule 12(b)(2) of the Federal Rules of Criminal Procedure. "'Multiplicity' involves charging the same criminal offense in two or more counts of an indictment or information." *United States v. Ragland*, 3 Fed. Appx. 279, 284 (6th Cir. 2001) (citing *United States v. Stanfa*, 685 F.2d 85, 86-7 (3d Cir. 1982)). However, where false statements are charged, analyzing an indictment for multiplicity requires determining "whether the questions and answers varied in subtle but meaningful ways, or whether the interviewing agent merely repeated or rephrased the same questions resulting in one alleged lie repeated multiple times." *United States v. McCafferty*, No. 10-cr-387, 2011 WL 933771, at *11 (N.D.Ohio Mar. 6, 2011) According to the Defendant, because several statements from the same interview are directed "to the same facet of the government's investigation," the government should be limited to one count per area of inquiry. [Doc. 18 at 5-8.]

The United States disputes that the indictment is multiplicitous, saying that each count is based on either a separate interview or a separate statement, and each involves individuated, non-identical false statements. [Hr'g Tr. 15:42]. "[T]he prosecution has broad discretion in bringing criminal cases." *United States v. Throneburg*, 921 F.2d 654, 657 (6th Cir. 1990). Even when directed to the same area of investigation, false statements under 18 U.S.C. § 1001 may be charged under multiple counts. *United States v. Siemaszko*, 612 F.3d 450, 469 (6th Cir. 2010). Assuming, *arguendo*, that the counts are multiplicitous, the Court declines to compel the government to elect counts at this time. "The district court has discretion in deciding whether to require the prosecution to elect between multiplicitous counts especially when the mere making of the charges would prejudice the defendant with the jury." *Throneburg*, 921 F.2d at 657

Case No. 1:11-CR-257
Gwin, J.

(quoting *United States v. Reed*, 639 F.3d 896, 904 n.6 (2d Cir. 1999)). Prejudice can be mitigated "by jury instructions that require the jury to consider each statement separately," or by "the submission of all counts on a single verdict form, grouped in such a way that each grouping of multiplicitous counts is contained on the same verdict form." *McCafferty*, 2011 WL 933771, at *15. Based on the nature of the allegations in this case, the Court has the additional concern that consolidating multiple false statements in this case may disadvantage the Defendant by inviting individual jurors to convict under disparate statements. Accordingly, the Court **DENIES** Defendant Bagshaw's motion without prejudice, and defers further consideration on the form of the indictment until proceedings nearer to trial.

*E. The Joint Motion To Continue Trial*

Parties jointly move to continue trial for 180 days. [Doc. 24.] The Court may grant a continuance upon a finding that the ends of justice are served, and a finding that the benefits of a continuance outweigh the harm to the public's and the defendant's interest in swift justice. 18 U.S.C. §3161(h)(7)(A).

In light of the delay in prosecution, this request is unreasonable. The public has an interest in bringing cases to a conclusion and a 180 day continuance causes unnecessary harm to the public's interest in swift justice. Nonetheless, in light of discovery and with due regard for the rights of Defendant Bagshaw, the Court **GRANTS** an abbreviated continuance as serving the ends of justice. Trial will be set for October 11, 2011 and there will be no further delay.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** the Defendant's two motions to suppress, **GRANTS** the Defendant's motion for leave to file a motion for a Bill of Particulars, **DENIES**

Case No. 1:11-CR-257
Gwin, J.

without prejudice the Defendant's motion to require the United States to elect counts, and

**GRANTS** in part the parties' joint motion to continue the trial until October 11.

.

    IT IS SO ORDERED.


Dated: September 6, 2011                          *s/     James S. Gwin*
                                                      JAMES S. GWIN
                                                      UNITED STATES DISTRICT JUDGE