```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                              :
UNITED STATES OF AMERICA                      :
                                              :      CASE NO. 1:11-CR-257
          Plaintiff,                          :
                                              :
vs.                                           :      OPINION & ORDER
                                              :      [Resolving Doc. Nos. 50, 51, and 64. ]
KAREN A. ANDERSON-BAGSHAW                     :
                                              :
          Defendant.                          :
                                              :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this case, the United States charges Karen A. Anderson-Bagshaw, a former employee of the United States Postal Service, with fraudulently procuring disability benefits. [Doc. 3.] The Defendant moves the Court to reconsider its denial of her motion to suppress video evidence from a pole camera, [Doc. 64], to limit several areas of potential testimony, [Doc. 50], and objects to references to "stammering" in a Government-created transcript. [Doc. 51.]

**I. The Defendant's Motion to Reconsider**

Defendant Bagshaw moves this Court to reconsider its Order denying her motion to suppress video surveillance footage. [Doc. 64.] According to the Defendant, the footage recorded by the government's pole camera mounted across a neighboring lot must be suppressed because her husband, James Bagshaw, intermittently takes his morning coffee in the nude, and her son was recorded relieving himself near a backyard tree. [*Id.* at 3.] She says that this supports

-1-

Case No. 1:11-CR-257
Gwin, J.

her argument she did not "knowingly expose" herself to the public because the behavior of her cohabitants manifests a subjective expectation of privacy, and that the duration of the video surveillance renders that subjective expectation objectively reasonable. [*Id.* at 5.]

Both arguments fail. First, she has still not established a subjective expectation of privacy. The backyard was plainly visible from the adjoining lots, [Doc. 30], and there is no indication that any steps were taken to establish the type of privacy zone that might render the area sacrosanct. *See United States v. Cuevas-Sanchez*, 821 F.2d 248 (5th Cir. 1987). The Defendant references a "privacy fence," saying that episodes of nudity imply that areas of the backyard were entirely concealed from view by this fence, [Doc. 64 at 4], but this so-called "privacy fence" is mislabeled, being merely a transparent wire-mesh fence aimed at containing errant alpacas that does nothing to obstruct the plain view of the backyard from the adjacent lots. [Doc. 30 at 6.] Nor does it obstruct the view from the pole where the Government had a right to be. *See United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011).

Moreover, nothing new demonstrates that the Defendant has manifested a subjective expectation of privacy. The episodes may indicate a subjective expectation of privacy on the parts of James Bagshaw and Donald Anderson, or may just as well indicate a blithe indifference to public exposure. But there is no indication that the Defendant shares either sentiment–though the absence of any similarly revealing conduct on the part of the Defendant suggests that she may have been more attentive to the unobstructed view available from the adjoining parcels. Indeed, counsel for the Defendant has represented that the Defendant observed the installation of the video camera, knew of its existence, and in fact was billed by the third-party internet company

Case No. 1:11-CR-257
Gwin, J.

that streamed the surveillance data. In any event, the Fourth Amendment does not permit a Defendant to select from a range of claimed subjective expectations of privacy from all persons who have been in a particular area, and invoke the most convenient. She must manifest her own. *Kyllo v. United States*, 533 U.S. 27, 27-28 (2001) ("A 'search' does not occur—even when its object is a house explicitly protected by the Fourth Amendment—unless *the individual* manifested a subjective expectation of privacy") (emphasis added).

The Defendant's motion still founders on the objectively reasonable prong of the privacy inquiry. Any subjective expectation, whether held by the Defendant, her husband, son, or the alpacas, does not transform the transparent fences described at the evidentiary hearing into the type of enclosure that gives rise to a reasonable expectation of privacy. [Doc. 30.] The Defendant baldly asserts that the area might be within the house's curtilege, but any effort at such a showing would be unavailing, *see Galaviz*, 645 F.3d at 355-56. Nor would a successful effort compel suppression. *California v. Ciraolo*, 476 U.S. 207, 213 (1986). The area was visible from the adjoining lots, *United States v. Bratton*, 434 F.2d 51 (6th Cir. 1970), and from "a pole overlooking the yard," *Ciraolo*, 476 U.S. at 214, where law enforcement officials had a right to be. *Florida v. Riley*, 488 U.S. 445, 449 (1989).

The Court notes that scattered authority supports the proposition that the objective reasonableness analysis can be affected by the duration of continuous surveillance. *E.g. State v. Thomas*, 642 N.E.2d 240, 244 (Ind. Ct. App. 1994); *United States v. Nerber*, 222 F.3d 597, 603 (9th Cir. 2000). And the Supreme Court left open the question of whether "different constitutional principles may be applicable" to 24-hour surveillance in *United States v. Knotts*,

Case No. 1:11-CR-257
Gwin, J.

460 U.S. 276, 283-84 (1983). These principles may soon be addressed by the Supreme Court, *United States v. Jones*, 131 S.Ct. 3064 (2011), which reviews the D.C. Circuit's recent determination that uninterrupted GPS surveillance over a period of 28 days can amount to a search because "unlike one's movements during a single journey, the whole of one's movements over the course of a month is not actually exposed to the public because the likelihood anyone will observe all those movements is effectively nil." *United States v. Maynard*, 615 F.3d 544, 558 (D.C. Cir. 2010). The mounted camera in this case, however, hardly creates the type of detailed portrait of a single subject's movements that might establish a privacy-implicating mosaic of information. By the admission of all parties, the camera focuses on the area of the backyard where the farm is located and cannot establish the type of individual-specific comprehensive activity profile implicated in mobile GPS surveillance. Nor does the remote off-site installation threaten the type of invasiveness at issue in the context of covertly installed indoor cameras.

Nonetheless, while noting that the Government in this case has brought an inordinate amount of investigative resources to bear on the this case, including sending three agents on a week-long Carribean cruise to monitor the Defendant, the Court **DENIES** the Motion to Reconsider, but directs the Government to omit any prurient footage of Defendant's husband or son from exhibits it seeks to admit.

**II. The Defendant's Motion in Limine**

Defendant Bagshaw further seeks an order in limine prohibiting several factual references at trial. [Doc. 50.] The Court addresses each in turn.

-4-

Case No. 1:11-CR-257
Gwin, J.

460 U.S. 276, 283-84 (1983). These principles may soon be addressed by the Supreme Court, *United States v. Jones*, 131 S.Ct. 3064 (2011), which reviews the D.C. Circuit's recent determination that uninterrupted GPS surveillance over a period of 28 days can amount to a search because "unlike one's movements during a single journey, the whole of one's movements over the course of a month is not actually exposed to the public because the likelihood anyone will observe all those movements is effectively nil." *United States v. Maynard*, 615 F.3d 544, 558 (D.C. Cir. 2010). The mounted camera in this case, however, hardly creates the type of detailed portrait of a single subject's movements that might establish a privacy-implicating mosaic of information. By the admission of all parties, the camera focuses on the area of the backyard where the farm is located and cannot establish the type of individual-specific comprehensive activity profile implicated in mobile GPS surveillance. Nor does the remote off-site installation threaten the type of invasiveness at issue in the context of covertly installed indoor cameras.

Nonetheless, while noting that the Government in this case has brought an inordinate amount of investigative resources to bear on the this case, including sending three agents on a week-long Carribean cruise to monitor the Defendant, the Court **DENIES** the Motion to Reconsider, but directs the Government to omit any prurient footage of Defendant's husband or son from exhibits it seeks to admit.

**II. The Defendant's Motion in Limine**

Defendant Bagshaw further seeks an order in limine prohibiting several factual references at trial. [Doc. 50.] The Court addresses each in turn.

Case No. 1:11-CR-257
Gwin, J.

### A. References to marijuana and paraphernalia in the Bagshaw home

The Defendant objects to any references to marijuana and drug paraphernalia found in her home as irrelevant or overly prejudicial. [Doc. 50 at 2-3.] The Government has no plan to introduce any such evidence in its case-in-chief, nor to impeach the Defendant's credibility, [Doc. 60 at 1], but indicates that the evidence would be appropriately introduced to challenge the credibility of James Bagshaw or Donald Anderson, who it says frequented the areas of the residence in which the paraphernalia was discovered. [*Id.* at 2.] The Court finds the evidence irrelevant as to the Defendant's credibility, but **GRANTS** the motion without prejudice to the Government's ability to ask the Court to reconsider if the Government can somehow show some relevance.

### B. Audible references to marijuana in a home video

The Defendant seeks to preclude the introduction of a home videotape at trial on the grounds that audible references to marijuana usage by a family friend render the footage more prejudicial than probative. [Doc. 50 at 3-4.] The Court **DENIES** this motion, crediting the Government's representation that the videotape is probative of the Defendant's involvement in alpaca farming, [Doc. 60 at 2], and finding any potential prejudice remediable by muting or otherwise redacting those reference from the footage. The Government is directed to make any necessary redactions.

### C. References to Dr. Michael Dicello's loss of his medical license, or any conviction

The Defendant says that any references to the revocation of her pain management physician's license to practice medicine are irrelevant. [Doc. 50 at 4.] The Government does not

-5-

Case No. 1:11-CR-257
Gwin, J.

intend to call Dicello as a witness, nor does it intend to impeach his original diagnosis. [Doc. 60 at 3.] Accordingly, the Court **GRANTS** the motion as to references to the revocation of Dicello's medical license and any criminal conviction connected therewith, but without prejudice. The Government can reopen this issue at trial should it become necessary.

*D. References to the conviction and imprisonment of the Defendant's sister*

The Defendant says that testimony concerning her sister's conviction for improperly obtaining prescription information is more prejudicial than probative, tending to suggest a propensity for lying to physicians. [Doc. 50 at 5.] The Government makes no objection and does not plan to introduce any such evidence unless the Defendant herself puts it at issue. [Doc. 60 at 3.] The Defendant's motion to limit testimony relating to her sister's criminal history is therefore **GRANTED**.

*E. References to James Bagshaw's injury and receipt of a disability pension.*

The Defendant says that any references to her husband's receipt of disability benefits are both irrelevant and prejudicial. [Doc. 50 at 6.] As the Government submits, this testimony is directly relevant to the Defendant's role in the alpaca farming operation, [Doc. 60 at 4], and its probative value exceeds any purported prejudicial effect. The motion to limit testimony relating to James Bagshaw's disability and receipt of benefits is **DENIED**.

**III. References to "stammering" in the Government's transcripts.**

The Defendant objected to the use of the term "stammering" in transcripts, saying that the term implies nervousness and is prejudicial. [Doc. 51.] The Government has removed the references

Case No. 1:11-CR-257
Gwin, J.

from its initial filing [Doc. 45] and has replaced the exhibits. [Doc. 61] The Objection is now

**OVERRULED** as moot.

    **IT IS SO ORDERED.**


Dated: October 17, 2011          *s/ James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE