UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-----------------------------------------------------
                                              :
UNITED STATES OF AMERICA                      :
                                              :      CASE NO. 1:11-CR-257
                 Plaintiff,                   :
                                              :
vs.                                           :      OPINION & ORDER
                                              :      [Resolving Doc. No. 126, 141]
KAREN A. ANDERSON-BAGSHAW                      :
                                              :
                 Defendant.                   :
                                              :
-----------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

       Former Postal Service employee Karen A. Anderson-Bagshaw applies for release on bond

pending appeal of her conviction for fraudulently procuring federal disability benefits.  At trial, the

government introduced portions of a video feed captured by a pole camera trained at a portion of her

property housing an alpaca barn. Following the government's bumbling installation (it sent her the

bill for the covert operation), the camera captured continuous live images for 24 days.

       The Court denied her motion to suppress video evidence from the pole camera,  [Doc. 64],

and denied her successive motion to reconsider that Order. [Doc. 83.] Because the Supreme Court's

recent decision in *United States v. Jones* is irrelevant to off-site pole camera surveillance and does

not "raise[] a substantial question of law . . . likely to result in . . . reversal [or] an order for a new

trial," 18 U.S.C. § 3143, and would not raise any significant likelihood of reversal or new trial in

light of the voluminous and redundant video evidence obtained by alternate means and introduced

by the Government at trial, the Court **DENIES** Bagshaw's motion to reconsider.

Case No. 1:11-CR-257
Gwin, J.

## I.  Background

Karen A. Anderson Bagshaw was convicted of fraudulently receiving disability benefits from her former employer, the United States Postal Service, while managing an active alpaca farming business.  At trial, the government sought to show that Bagshaw repeatedly lied on disability forms, claiming total disability while she was able to engage in oft-strenuous business of alpaca farming. The jury returned guilty verdicts on fourteen counts of wire fraud and false representations.

The investigation of Karen A. Anderson-Bagshaw, as revealed by the government's voluminous evidence at trial, was intensive to the point of farce.  Agents from the investigative arm of the United States Postal Service trailed Bagshaw and her elderly mother on a lengthy tropical cruise, trailing the unsuspecting pair across scenic vistas and day trips, through onboard restaurants and bingo halls, amassing video evidence to be introduced at trial.  Agents clumsily impersonated aspiring alpaca enthusiasts, captured video recordings of their interactions and Bagshaw's participation in alpaca expositions, and engaged in a multi-person airport sting operation to capture footage of Bagshaw loading and unloading her luggage.

In addition to this video evidence, the government introduced footage captured by a live, silent video feed from a pole camera installed on a telephone pole adjacent to Bagshaw's property. With the assistance of a local power utility, the government installed the camera and engaged an internet streaming service to ensure that the video feed could be accessed securely and remotely. That feed, running continuously for 24 days between June 17 and July 10, 2009, was viewed for three to five hours a day by an agent for the United States Postal Service, who culled evidence for presentation as evidence at trial.  The government made no intrusion onto Bagshaw's property in the installation or use of the pole camera.

Case No. 1:11-CR-257
Gwin, J.

Bagshaw moved unsuccessfully to suppress the pole camera footage. Finding the surveilled area outside of the curtilege of the Bagshaw's residence, and readily viewable from where the government had a right to be, the Court denied the motion. The Court noted that the camera was installed on the power company's property by the power company's mechanics, and afforded a view no different that "available to a curious utility worker with a cheap pair of binoculars." [Doc. 30 at 7.] Following the Supreme Court in *California v. Ciraolo*, 476 U.S. 207, 214 (1986), which refused to create "a rule of constitutional dimensions" that backyard conduct "will not be observed by . . . a power company repair mechanic on a pole overlooking the yard," the Court likewise declined to do so. [Doc. 30 at 6.]

On Bagshaw's motion for reconsideration, though Bagshaw failed to raise the issue,[1/] the Court addressed the then-pending implications of uninterrupted video surveillance. The Court acknowledged that the Supreme Court was being urged to adopt a mosaic theory solicitous of the invasive effects of constant personal GPS surveillance, but noted that the fixed and limited scope of the pole camera would likely not offend the Fourth Amendment even if the Supreme Court chose to take such a step in *Jones*. [Doc. 83 at 3-4.]

## II. Legal Standard

Through the Bail Reform Act of 1984, Congress reversed the prevailing presumption that a convicted defendant would be released pending appeal. *See United States v. Powell*, 761 F.2d 1227, 1232 (8th Cir. 1985). 18 U.S.C. § 3143(b) provides that a defendant, having been convicted and sentenced to incarceration, must be incarcerated pending appeal unless her appeal "raises a

---

[1/] Bagshaw's challenge was based on the fact that review of the pole camera footage revealed period backyard nudity and urination on the respective parts of her husband and son, evincing subjective expectations of privacy.

Case No. 1:11-CR-257
Gwin, J.

substantial question of law . . . likely to result in . . . reversal [or] an order for a new trial," or a significantly reduced sentence.

To justify releasing a convicted defendant on bond pending appeal, a district court must find that (1) the appeal raises a "substantial" question, or "a 'close question or one that could go either way,'" and (2) that the question "is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *United States v. Pollard*, 778 F.2d 1181-2 (6th Cir. 1985) (quoting *United States v. Powell*, 761 F.2d 1227 (8th Cir. 1985) (*en banc*)).

### III. Analysis

Bagshaw's appeal does not present a "substantial question of law." Though she seeks to implicate the Supreme Court's recent decision in *Jones*, it does not apply. Bagshaw suggests that the continuous duration of surveillance implicates concerns expressed in Justice Alito's concurrence that long-term continuous GPS monitoring may threaten heightened invasiveness, but *Jones* does not so hold. The majority limited its analysis to the trespassory nature of the GPS installation, refusing to establish some point at which uninterrupted surveillance might become constitutionally problematic. *United States v. Jones*, 132 S. Ct. 945, 954 (2012). Bagshaw's speculation as to what the concurrences may portend suggests that "reasonable [Justices] could differ" on the appropriate Fourth Amendment analysis applicable to long-term GPS surveillance, or even non-trespassory visual surveillance through electronic means, but the fact that reasonable judges may disagree does not create a "substantial question of law." *Powell*, 761 F.2d at 1234 ("it is not sufficient to show simply that reasonable judges could differ (presumably every judge who writes a dissenting opinion is still 'reasonable') or that the issue is fairly debatable or not frivolous.").

-4-

Case No. 1:11-CR-257
Gwin, J.

If the majority had adopted a mosaic theory condemning uninterrupted GPS surveillance, and further extended that theory to non-trespassory surveillance, then perhaps a substantial question of law might have been presented as to the constitutionality of the continuously streamed footage. Perhaps then the constitutionality of the 24-day surveillance would be a close question, or one that could go either way. But no such theory was adopted, and the pole camera footage remains soundly within the purview of caselaw reviewed in the Court's denial of Bagshaw's motion to suppress and motion to reconsider, under which authority this is not a close question.

Moreover, even if *Jones* had created a substantial question by declaring the non-trespassory video surveillance by a stationary camera unconstitutional after some period of days, and the pole camera under consideration here offended that limit,  Bagshaw would still not be entitled to release on bond.  She cannot "show that the substantial question . . . is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor."  *Powell*, 761 F.2d at 1234.  There was simply too much video evidence at trial, of which the pole camera footage was not the most inculpatory.  Footage from alpaca exhibitions revealing the defendant muscling a rearing alpaca into submission, for example, was far more damning than the pole camera footage.  And Bagshaw makes no effort to develop any argument on this second factor–she merely "states" that *Jones* would "require" reversal and remand by the Court of Appeals. [Doc. 126 at 10.]  In light of the video evidence from the cruise, alpaca shows, and airports, Bagshaw cannot show that the pole camera evidence was so integral to her conviction that reversal would compel reversal of her conviction or a new trial.

For the foregoing reasons, Bagshaw's motion for release on bond pending appeal is

Case No. 1:11-CR-257
Gwin, J.

**DENIED**.  Her motion to delay her surrender date is accordingly **DENIED** as moot.

IT IS SO ORDERED.


Dated: March 8, 2012                                    *s/      James S. Gwin*
                                                       JAMES S. GWIN
                                                       UNITED STATES DISTRICT JUDGE